IN THE UNITED STATES DISTRICT COURT        O
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **YESSINIA VALENTIN** | § | |
| *Petitioner*, | § | |
| | § | **CIVIL ACTION NO.  5:09-cv-36** |
| **v.** | § | **CRIMINAL NO. 5:06-cr-710-002** |
| | § | |
| **UNITED STATES,** | § | |
| *Respondent.* | § | |

## OPINION & ORDER

Pending before the Court is Yessinia Valentin's ("Valentin") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255. [Dkt. No. 1].[1]  The Court concludes that it is not necessary to order the Government to respond to the §2255 Motion because it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  28 U.S.C. § 2255, PROC. R. 4(b); *see also United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983).  Having duly considered the petition and applicable law, Valentin's petition is **DISMISSED with prejudice**.

## I.     FACTS AND PROCEEDINGS

On April 13, 2006, Yessina Valentin and her two co-defendants, Cynthia Zamora and Rebecca Acosta, were passengers on a bus traveling from Mexico to Chicago, Illinois. [Presentence Investigation Report ("PSR"), at ¶ 9].  The bus stopped at the Lincoln-Juarez Bridge II Port of Entry in Laredo, Texas where Customs and Border Protection Officers inspected the passengers.  [*Id.* at ¶ 10].  The officers noticed that Acosta was wearing warm

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.  "Dkt. No." will be used to refer to filings in case number 5:09-cv-36.  Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:06-cr-710-002.  Citations to "Minute Entries" will be used to refer to entries made for criminal case number 5:06-cr-710-002.

baggy clothes, unusual for the hot Laredo climate.  [*Id.*].  They then searched Acosta and found four bundles of cocaine weighing 4.58 kilograms strapped to her abdomen.  [*Id.*]  The officers then searched Zamora and Valentin whom they had observed speaking to Acosta earlier.  [*Id.* at ¶ 11].  The officers discovered 2.32 kilograms of cocaine tied to each of Zamora and Valentin's body.  [*Id.*].

On May 9, 2006, a federal grand jury in Laredo, Texas indicted Valentin and her co-defendants of: (1) conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A); and (2) possession with intent to distribute in excess of five kilograms of cocaine in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A), and Title 18, United States Code, Section 2.  [*See* Cr. Dkt. No. 20].  Valentin proceeded to trial.  On August 17, 2006, a jury found Valentin guilty of both counts.  [Cr. Dkt. No. 104].  Subsequently, on December 19, 2006, the Court sentenced Valentin to 121 months incarceration, followed by five years of supervised release, and a $200 special assessment fee. [Cr. Dkt. No. 137, 138].  L. Chris Iles represented Valentin at trial while Luis Antonio Figueroa represented Valentin at sentencing and on appeal.

On direct appeal, the U.S. Court of Appeals for the Fifth Circuit affirmed Valentin's conviction.  [Cr. Dkt. No. 160, 161].  On March 23, 2009, Valentin filed the §2255 Motion now before the Court.  [Dkt. No. 1].  Valentin frames her claims in this case in terms of ineffective assistance of counsel during plea negotiations and at sentencing.  Valentin first contends that she would have accepted the Government's plea offer made prior to trial but "my attorney persuaded me to refuse it."  *Id.* at 4.  Second, Valentin asserts that her attorney should have moved for a "safety valve" sentence adjustment pursuant to 18 U.S.C. 3553(f).  *Id.* at 5.  Third, Valentin

maintains that her attorney should have referred her for a psychological evaluation and moved for a "diminished capacity" departure under §5K2.13 of the U.S. Sentencing Guidelines. *Id.* at 5, 9. She alleges that she has been diagnosed as bi-polar and was suffering from post-partum depression at the time of the offense. *Id.* Fourth, Valentin argues that her appellate attorney did not advise her on what grounds the appeal would be based or ask for her input.

## II. JURISDICTION

The Court has jurisdiction over Valentin's §2255 Petition. Valentin's Petition is timely because it was filed within one year of the date on which her judgment of conviction became final, i.e., the time in which Valentin could have sought direct appeal from the Fifth Circuit to the United States Supreme Court. *See* 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that if a federal defendant appeals her conviction to the court of appeals and then does not seek certiorari to the Supreme Court, the conviction becomes final when the 90-day period expires during which the defendant could have filed a petition for certiorari).

## III. LEGAL STANDARD

### A. 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Seyfert*, 67

F.3d 544, 546 (5th Cir. 1995) (citations omitted).  After conducting an initial examination of the petition, the Court must dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  28 U.S.C. § 2255, PROC. R. 4.

**B.      Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Moreover, "the right to counsel is the right to the effective assistance of counsel."  *Id.* at 686.  (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  In order to merit post-conviction relief due to ineffective assistance of counsel, Valentin must demonstrate that (1) counsel's performance was deficient and (2) that the petitioner suffered prejudice as a result.  *Id.* at 687; *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994) (summarizing the *Strickland* standard of review).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See id.*; *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").  Thus, a court does not have to analyze both components of a claim of ineffective assistance of counsel if the movant has made an insufficient showing as to one prong.  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

Under the "performance" prong, counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In assessing whether counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Under the "prejudice" requirement, Valentin must show a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.  *Id.* at 689.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong.  Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'"  *Crane v. Johnson*, 178 F.3d 309, 312-313 (5th Cir.), *cert. denied*, 528 U.S. 947 (1999) (quoting *Ransom v. Johnson,* 126 F.3d 716, 721 (5th Cir.), *cert. denied*, 522 U.S. 944 (1997)).

## III.   DISCUSSION

### A.   Plea Agreement

Valentin first contends that she received ineffective assistance of counsel from her attorney on whether to plead guilty or to proceed to trial.  [Dkt. No. 1 at 4].  Specifically, Valentin asserts, "I was offered a plea deal for 5 years.  My attorney persuaded me to refuse it . . . . Having no legal knowledge, I completely trusted my appointed attorney when he advised me to refuse the deal, stating the judge would not be bound by it, primarily."  [*Id.*].  Valentin proceeded to trial.

The Fifth Circuit has stated that "[o]ne of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty" or proceed to trial.  *United States v. Herrera*, 412 F.3d 577, 580 (2005) (citing *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965)).  When conveying a plea offer from the government to a client, defense counsel should advise his client of all relevant circumstances and

the likely consequences of pleading guilty or proceeding to trial.[2]  *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995) (citations omitted); *see also U.S. v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) ("[T]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case . . . [C]ounsel may and must give the client the benefit of counsel's professional advice on this crucial decision.").  The defendant can then make an informed, intelligent decision on this crucial issue.  *Id.*  Indeed, the decision whether to accept or reject a plea offer is a fundamental decision that the defendant, not counsel must make.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (citations omitted) (recognizing that "the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal").

Here, the record reflects that Valentin's counsel advised her of the plea agreement as well as the likely consequences of pleading guilty versus proceeding to trial.  The Government offered a plea agreement where Valentin would plead guilty to possession with intent to distribute in excess of 500 grams of cocaine.  [Trial Tr., Vol. II, at 378-81].  In exchange, the Government would dismiss with prejudice the indictment charging possession and conspiracy with intent to distribute in excess of five kilograms of cocaine.  [*Id.* at 379].  Valentin chose not to accept this agreement.  Under oath immediately following trial, Valentin's counsel questioned her about her decision not to accept the agreement.  The discussion went as follows:

> Iles:        Did you and I have a discussion about this other plea agreement . . . where the Government would reduce the charges and let you plea to a lesser [amount] or in excess of 500 grams versus five kilograms in the indictment?  Did we have that discussion?

---

[2]  In *Strickland*, the Supreme Court stated that "the fact that a defendant, after rejecting a guilty plea, still receives all the constitutional protections of trial does not preclude an attack on sixth amendment grounds if counsel's performance during plea bargaining fell below 'the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687.  Accordingly, this Court examines whether Valentin received ineffective assistance as to whether to plead guilty or not.

6 / 12

| | | |
|---|---|---|
| Valentin: | Yes, sir. | |
| Iles: | Okay.  And did I explain to you that was an option, although it was not necessarily going to guarantee any – any quantity of cocaine?  Did we talk about that? | |
| Valentin: | Yes. | |
| Iles: | And you understood that? | |
| Valentin: | Yes. | |
| Iles: | Okay.  And you – Did you advise me that you still had concerns about that plea agreement? . . . You didn't want to accept it.  Is that what you advised me? | |
| Valentin: | Yes. | |
| Iles: | And you advised me that you would rather go to trial because you didn't feel like it was fair for anyone to hold you guilty for more than the two kilograms of cocaine; is that correct? | |
| Valentin: | Yes, sir. | |
| Iles: | Okay.  And it was your decision to go to trial; is that correct? | |
| Valentin: | Yes. | |
| Iles: | And you understood that you didn't have to go to trial; is that correct? | |
| Valentin: | Yes. | |

[*Id.* at 380-81].   This exchange establishes that trial counsel advised Valentin of the plea agreement.  Trial counsel also informed her of the possible consequences of pleading guilty, particularly that she could receive more than five years, the statutory minimum, for pleading guilty to possession with intent to distribute in excess of 500 grams.  Moreover, this was correct advice.  The type and quantity of a controlled substance attributed to a defendant's relevant conduct determines a defendant's base offense level when calculating their guideline sentence.

U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(c) (2005).  Relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction."  U.S.S.G. § 1B1.3(a)(1).  Even if Valentin pled guilty, the Court could have determined that Valentin was responsible not only for the cocaine strapped to her stomach but also for that cocaine tied to her co-conspirators' stomachs.  Therefore, had Valentin pled guilty she might not have received the five-year statutory minimum that she claims was offered by the Government in her habeas petition.

Under these circumstances, Valentin has not demonstrated that her counsel's conduct fell below an objective standard of reasonable service.  *See Teague*, 60 F.3d at 1170.  Therefore, Valentin did not receive ineffective assistance of counsel and is not entitled to relief on this claim.

### B.      The "Safety Valve" Issue

Valentin next asserts that her counsel was ineffective because counsel did not argue that she qualified for a safety valve two-level downward departure.  [Dkt. No. 1 at 6-7].  The United States Sentencing Guidelines' "safety valve" provision permits a court to issue a sentence below the mandatory minimum if the defendant meets five criteria.  *United States v. Ridgeway*, *abrogated on other grounds*, 321 F.3d 512, 515 (5th Cir. 2003); *United States v. Flanagan*, 80 F.3d 143, 146-47 (5th Cir. 1996).  To be eligible for the safety valve, U.S.S.G. § 5C1.2 requires that a defendant demonstrate: (1) he does not have more than one criminal history point; (2) he did not use violence or threats of violence or possess a weapon during the offense; (3) his offense did not result in death or serious bodily injury to any person; (4) he was not an organizer, leader, or other major participant in the offense; and (5) that not later than the time of his sentencing

hearing, he has truthfully provided to the government all information and evidence he has concerning the offense.  U.S.S.G. § 5C1.2; *see also* 18 U.S.C. § 3553(f)(5); *United States v. Rodriguez*, 60 F.3d 193, 196 (1995) (citing H.R. Rep. 460, 103d Cong., 2d Sess. (1994)) (stating the safety-valve provision allows less culpable and less knowledgeable defendants who have fully assisted the government by providing all of the information they know to avoid application of statutorily mandatory minimum sentence).  The defendant has the burden to show that he has satisfied all five of the safety-valve factors and that the information he provided was truthful.  *Flanagan*, 80 F.3d at 146-47.

Valentin's allegation that her attorney did not argue for a "safety valve" adjustment under 18 U.S.C. § 3553(f) and U.S.S.G. §5C1.2 is without merit.  Valentin's counsel moved the Court for the benefit of the safety valve reduction in his "Sixth Amended Objections to the Pre-Sentence Investigation Report."  [Cr. Dkt. No. 117].  Counsel also raised the possibility of a safety valve reduction at the beginning of the sentencing hearing.  [Sentencing Tr. at 4].  Specifically, Valentin's counsel stated:

> We ask the court to consider safety valve. . . . [W]e feel that the safety-valve debrief was truthful – that she told what she knew. . . . And there were some inconsistencies, but it doesn't go to the full – or the crux of the matter.  And the crux is that she did agree to come from Chicago, go to Mexico, at some point there was some type of duress.  She felt she was pressured and that she couldn't get out.  She was in fear.  That didn't fly with the jury.  However, [] the main facts are undisputed, and I think she said it at trial and she said them at the safety valve.  So we ask the court to consider her mental state in granting the safety valve.

[Sentencing Tr. at 6-8].  The Court just disagreed with Defense Counsel that Valentin qualified for safety valve.  The Court heard argument from the Government that it did not believe Valentin had truthfully debriefed.  [*Id.* at 4-6].  There were discrepancies in her story.  For example, Valentin testified at trial that she could not make phone calls from the hotel in Mexico.  She was

being held against her will.  At the debriefing, Valentin, however, said that she made calls to her mother and husband from the hotel.  [*Id.* at 4-5].  Based on counsel's argument and having presided over the trial and a suppression hearing, the Court found that Valentin had not satisfied the fifth requirement for safety valve relief, i.e., that she truthfully debriefed to the government prior to sentencing.[3]  *See United States v. Edwards*, 65 F.3d 430, 433 (5th Cir. 1995) (denying application of § 5C1.2 because defendant provided conflicting accounts of the offense).

Because her attorney did argue for a safety valve downward departure, Valentin did not meet her burden of showing that her attorney's performance was deficient.  Additionally, Valentin cannot show prejudice, as the Court, in the face of defense counsel's argument, concluded that safety valve relief should not be granted.  [Sentencing Tr. at 11].  Therefore, Valentin has not established she received ineffective assistance of counsel.

### C.     Diminished Capacity and the Need for a Psychiatric Evaluation

Third, Valentin argues that her counsel erred in failing to request a downward departure based on her "diminished capacity."  [Dkt. No. 1 at 4, 9].  Valentin contends that her attorney "was aware of my bipolar diagnosis at age 14" and that "I was absolutely crazed with post-partum depression."  [*Id.* at 9].  Valentin had given birth to a baby just before she attempted to smuggle the cocaine into the United States and was pregnant again at the time of trial.  [*Id.*].  Based on this knowledge, Valentin asserts that her attorney should have requested a psychiatric evaluation and moved for a downward departure based on diminished capacity under § 5K2.13.

---

[3] The Court reasoned:

> Having sat through the motion to suppress, the trial itself – obviously, not the debriefing . . . I do not believe that she was completely truthful . . . I don't know whatever she may have said in the debriefing was truthful or not, but I do know . . . that there were questions in the Court's mind as to her credibility during the motion to suppress.  I made determinations as to that issue.  During the trial the jury did both, which went against Ms. Valentin.  Mr. Sardelli and Mr. Figueroa both admit that these were inconsistencies, and the court is not convinced that she has been completely truthful.  The safety valve will not be granted.

[Sentencing Tr. at 10-11].

Under U.S.S.G. § 5K2.13 a downward departure may be warranted "if the defendant committed the offense while suffering from a significantly reduced mental capacity."  U.S.S.G. § 5K2.13.   The Sentencing Guidelines define a "significantly reduced mental capacity" as a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.  U.S.S.G. § 5K2.13, Application Note 1.

Valentin's argument that her counsel failed to request a downward departure based on diminished capacity is false.   While Valentin's counsel did not raise this argument at the sentencing hearing, he did move for a downward departure in the sentencing memorandum.  [Cr. Dkt. No. 117, at 4-6].   Moreover, Valentin has not pled sufficient facts to suggest that she suffered from a significantly reduced mental capacity as required by § 5K2.13 or that a psychiatric evaluation would have aided her at the sentencing hearing.   Valentin alleges that she suffered from depression and had been diagnosed as bipolar, facts noted in the Pre-Sentence Investigation Report and re-iterated by her counsel in his sentencing memorandum.  [PSR at ¶¶ 61-65; Cr. Dkt. No. 117, at 4-6].   Furthermore, the Court presided over the suppression hearing, the trial, and the sentencing.   Had the Court held any concerns regarding Valentin's mental capacity, it could have ordered an evaluation *sua sponte*.   Thus, the Court was fully apprised of Valentin's psychological history.   Valentin cannot meet either prong of the *Strickland* standard as to this claim.   She has not demonstrated that counsel was deficient or that she was prejudiced. Her claim of ineffective assistance of counsel, thus, lacks merit.

### D.      Representation on Appeal

Fourth, Valentin asserts that she did not receive effective assistance of counsel on appeal. Specifically, Valentin states my appellate attorney "did not advise me before he did my appeal

on what grounds would be used, or ask for my input.  Our communication was limited through

his secretaries."  [Dkt. No. 1 at 4].  Valentin, however, never states expressly what issues her

attorney should have appealed that he did not.  *See* 28 U.S.C. § 2255, Proc. R. 2(c) (requiring

that a habeas petition "specify all the grounds for relief available to the petitioner" and "state the

facts supporting each ground").  Because Valentin has not provided the grounds that she believes

her counsel should have appealed, the Court cannot determine if her appellate counsel was

deficient for failing to raise these arguments.  Moreover, it is counsel's duty to choose among

potential issues which ones to appeal based on his judgment as to their merits and their tactical

advantages.  *Jones v. Barnes*, 463 U.S. 745, 749 (1983); *see also Smith v. Collins*, 977 F.2d 951,

962 (5th Cir. 1992) (stating counsel not required to raise frivolous issues on appeal even when

defendant insists that he does).  Thus, Valentin has not established she received ineffective

assistance of counsel on appeal.

## IV.     CONCLUSION

Petitioners' Motion to Vacate, Set Aside, or Amend Judgment is **DISMISSED WITH**

**PREJUDICE**.  Any future request for a certificate of appealability is **DENIED**.

IT IS SO ORDERED.

DONE this 1st day of June 2009, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**